304 S.E.2d 7

**Charles J. COURY, et al.**

v.

**Callie TSAPIS, Judge, etc.**

No. 15773.

Supreme Court of Appeals of
West Virginia.

March 25, 1983.

Rehearing Denied July 5, 1983.

Jolyon W. McCamic, McCamic & McCamic, Wheeling, for petitioners.

Frederick P. Stamp, Jr., Schrader, Stamp, Byrd, Byrum, Johnson & Companion, Wheeling, for respondent Wheeling-Pittsburgh Steel Corp.

MILLER, Justice:

This proceeding was brought by Charles J. and Evelyn C. Coury as an original petition in prohibition upon the claim that the trial judge was without jurisdiction to set aside a default judgment in their favor in their suit against Wheeling-Pittsburgh Steel Corporation (hereinafter Wheeling-Pittsburgh). The parties subsequently filed the record from the Circuit Court of Brooke County and have agreed that we can consider the merits of the trial court's ruling under Rule 60(b) of the West Virginia Rules of Civil Procedure as well as the procedural issue. Thus, in effect, we treat this case as one on appeal.

The Courys assert that Wheeling-Pittsburgh made its motion to set aside the default judgment beyond the eight-month time limitation provided in Rule 60(b). They also claim that the corporation failed to show excusable neglect in not filing a timely answer. We disagree that the defendant was foreclosed from utilizing a Rule 60(b) motion, but on the merits conclude that the trial judge abused her discretion in setting aside the default.

I.

THE PROCEDURAL ISSUE

The procedural history of this case reveals that on May 5, 1981, the Courys filed a complaint against Wheeling-Pittsburgh in the Circuit Court of Brooke County. The complaint alleged that the corporation had failed to provide Charles J. Coury with a safe place to work and that as a result he had sustained personal injuries. His wife claimed for loss of consortium. A summons and a copy of the complaint were served upon the West Virginia Secretary of State on May 7, 1981, and actual notice was received by Wheeling-Pittsburgh on May 12, 1981. The suit papers were then forwarded to Wheeling-Pittsburgh's insurance representative on May 14, 1981.

No answer or other responsive pleading was ever filed on behalf of Wheeling-Pittsburgh, and on June 22, 1981, the trial judge entered a "default judgment" on the corporation's liability. The order left open the question of the amount of damages sustained.

On April 29, 1982, more than eight months after entry of the "default judgment," Wheeling-Pittsburgh filed a motion to set aside the judgment. The Courys resisted the motion on the ground that there was no excusable neglect on the part of the corporation and on the further ground that more than eight months had elapsed since entry of the judgment. They asserted that the eight-month time limitation in Rule 60(b) of our Rules of Civil Procedure barred the court from setting the order aside. The court, on November 30, 1982, entered an order setting aside the "default judgment" and permitting the corporation to file an answer to the complaint.

We begin by noting that Rule 60(b)[1] of our Rules of Civil Procedure is analogous

---

1. The material part of Rule 60(b) is:

    "*Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following rea-

sons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or

to Rule 60(b) of the Federal Rules of Civil Procedure. The main difference between our rule and its federal counterpart is that the time for bringing a 60(b) motion on grounds of excusable neglect is eight months under our rule and one year under the federal rule. Wheeling-Pittsburgh contends that we should not hold the eight-month time period under 60(b) as jurisdictional under the facts of this case.

■■■■ In order to resolve this question, it is necessary to examine the distinction between a default and a default judgment under Rule 55 of our Rules of Civil Procedure. Our Rule 55 makes a clear distinction between two types of cases. Rule 55(b)(1)[2] relates to cases where the amount sued for is a sum certain or which can be rendered certain by computation. Upon a default in this category of cases, the court can enter a judgment not only as to liability but also as to the amount due. The second category, covered by our Rule 55(b)(2),[3]

applies to cases where the amount sued for is not a sum certain. In this situation, after a default is entered, a further hearing is required in order to ascertain the damages. We spoke of these distinctions in *Farley v. Economy Garage*, 170 W.Va. 425, 294 S.E.2d 279 (1982), and stated in its single Syllabus:

> "Where a default judgment has been obtained under Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, a trial court is required to hold a hearing in order to ascertain the amount of damages if the plaintiff's claim involves unliquidated damages."

Our Rule 55 is somewhat analogous to Rule 55 of the Federal Rules of Civil Procedure except that under the federal rule the clerk is authorized to enter the default judgment on a sum certain.[4] Moreover, federal Rule 55(a),[5] permits the clerk to enter a default in any case, a provision

other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation."

2. Rule 55(b)(1) provides:
"Sum Certain.—When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the court upon request of the plaintiff and upon affidavit showing the defendant's failure to appear and the amount due shall direct the entry of judgment by the clerk for that amount and costs against the defendant, if he is not an infant, incompetent person, or incarcerated convict."

3. Rule 55(b)(2) provides:
"Other Cases.—In all cases the party entitled to a judgment by default shall apply to the court therefor and shall file with the court an affidavit showing the other party's failure to appear or otherwise defend; but no judgment by default shall be entered against an infant, incompetent person, or incarcerated convict unless represented in the action by a guardian, guardian ad litem, committee, curator or

other representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary."

4. Rule 55(b)(1) of the Federal Rules of Civil Procedure spells out the clerk's role:
"*By the Clerk.* When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if he has been defaulted for failure to appear and if he is not an infant or incompetent person."

5. Rule 55(a) of the Federal Rules of Civil Procedure states:
"*Entry.* When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default."

which is not present in our rule. The federal law explicitly recognizes both defaults and default judgments in that a default relates to the issue of liability and a default judgment occurs after damages have been ascertained. Under the federal rule, if damages are for a sum certain the clerk can enter both the default and the default judgment. Where damages are unliquidated, the clerk may enter the default for failure to answer but the court must hold a further hearing to ascertain the damages before rendering a default judgment. Federal Rule 55 is summarized in 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice § 55.02[3] (2d ed. 1982):

> "Rule 55(a) provides that the clerk is to enter the default of a party against whom a judgment for affirmative relief is sought, who has failed to plead or otherwise defend, and that fact is made to appear by affidavit or otherwise....
>
> "Subsequent to the entry of default, Rule 55(b) provides that judgment by default is to be entered by the clerk in certain specified situations; and in all other cases by the court." (Footnotes omitted)

The federal rule's distinction between a default and a default judgment has resulted in a recognition that a default order is interlocutory. In reality, it represents a default on liability and, until the amount of damages is ascertained, there is no final judgment. Consequently, under Rule 55(c)

of the Federal Rules of Civil Procedure[6] a default can be set aside by a good cause motion but a default judgment can only be set aside by a Rule 60(b) motion. Under the federal practice, Rule 60(b) operates only on final judgments and thus its attendant time limitation does not come into play until there has been a monetary judgment.[7] *See Meehan v. Snow,* 652 F.2d 274 (2nd Cir.1981).

We have previously noted that Rule 55 of the West Virginia Rules of Civil Procedure makes no distinction between a default and a default judgment and consequently, our Rule 55(c) addresses only the setting aside of a default judgment under Rule 60(b).[8] This difference between our Rule 55 and the federal rule is discussed on several occasions in Lugar & Silverstein, W.Va. Rules. In the Reporters' Original Note to Rule 55, this statement is made:

> "This provision is based on present West Virginia practice rather than the federal rule. The federal rule permits entry of 'default' or 'default judgment' by the clerk, whereas the rule presented here has no such thing as 'default' and requires entry of judgment by the court himself." Lugar & Silverstein, W.Va. Rules p. 415 (1960 ed.).

In their general discussion of Rule 55(b), the following comments are made:

> "The basic difference in Federal Rule 55 and this Rule appears in the combina-

---

6. Rule 55(c) of the Federal Rules of Civil Procedure provides:

    "*Setting Aside Default.* For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

7. The federal practice surrounding Rule 55(c) is summarized in 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice § 55.10[1] (2d ed. 1982):

    "Since the entry of default is largely a formal matter, if the defendants are actually in default they should apply to the trial court for relief on a showing of good cause, even though a formal entry has not been made. Although a defendant is in default and an entry thereof has been made, the entry is only an interlocutory act looking toward the subsequent entry of a final judgment by default. Rule 60(b) is properly confined to relief from

a final judgment, and its time limits do not, therefore, restrict the power of the court in granting relief from a default. Thus while the time which the defendant has allowed to elapse between his default and his motion to set aside the default is properly a factor to be considered, where good cause is shown, such as mistake, the court may set aside the default on a motion made more than one year after the entry of default, although the court could not set aside a default judgment, because of mistake, on the basis of a motion made more than one year after entry of the default judgment. This distinction between a default, which involves interlocutory action, and a judgment by default, which represents final judicial action, is sound." (Footnotes omitted)

8. West Virginia's Rule 55(c) states: "*Setting aside default judgment.*—A judgment by default may be set aside in accordance with Rule 60(b)."

tion of Federal Rule 55(a) and (b) into subdivision (b) of the West Virginia Rule. Federal Rule 55(a) provides for entry of *default* when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the Rules and that fact is made to appear by affidavit or otherwise. The clerk enters his default. There is no such procedure in the West Virginia Rule. However, under the same circumstances, except that proof must be by affidavit if the defendant has failed to appear or otherwise defend, West Virginia Rule 55(b) provides for the court's directing entry by the clerk of *judgment by default*. The West Virginia Rule provides only one step; the Federal Rule provides for the clerk's entering default and thereafter entry of judgment by default, in some instances by the clerk and in all others by the court." Lugar & Silverstein, W.Va.Rules pp. 416–17 (1960 ed.). (Emphasis in original).

Moreover, in their discussion of our Rule 55(c), this statement is made:

"This subdivision is different from the Federal Rule in the omission of any reference to setting aside an entry of default.

"Since there are no 'entries of default' under the West Virginia Rule, no provision in West Virginia Rule 55(c) is needed for setting them aside for good cause." Lugar & Silverstein, W.Va.Rules p. 423 (1960 ed.).

Although our Rule 55 does not recognize the concept of a "default," we have in our default judgment cases permitted the defendant to utilize a Rule 60(b) motion to attack what amounts to a default on liability when there was no rendition of a monetary judgment against the defendant. *E.g., Parsons v. McCoy*, 157 W.Va. 183, 202 S.E.2d 632 (1973); *Hamilton Watch Co. v. Atlas Container, Inc.*, 156 W.Va. 52, 190

S.E.2d 779 (1972); *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970).

It is true that in none of the foregoing cases did we have occasion to consider when the eight-month time limitation contained in Rule 60(b) should be applied, which is the issue that we have before us. Although Rule 60(b) expressly speaks of relief "from a final judgment, order, or proceeding," we have been rather liberal in determining what is a final order in our default judgment cases. For example, in *Parsons v. McCoy, supra,* we recognized that the plaintiff could appeal an order under Rule 60(b) setting aside his default judgment. Obviously, such order was not final in the technical sense, as the merits of the case could still be litigated.[9] In *Parsons v. Consolidated Gas Supply Corporation*, 163 W.Va. 464, 256 S.E.2d 758 (1979), the defendant lost his Rule 6(b) motion to file a late answer and, as a consequence, had a default judgment entered against him. We permitted him to appeal although no damage award had been made and the default order was, technically, not a final order.[10]

■ It thus appears that we have adopted a rather liberal procedural rule with regard to appeals of default judgments. Specifically, we have recognized that a Rule 60(b) motion can be utilized to seek relief from a default order even where the amount of damages has not been ascertained. For purposes of a default, the finality of the order is not a test for a Rule 60(b) motion.

■ The fact that we permit a Rule 60(b) motion to be used even when a default order is not final (in the sense that a monetary amount has not been rendered) does not mean that the eight-month period contained in Rule 60(b) begins immediately on the entry of a default order. We believe that the unitary concept embodied in our Rule 55, as previously discussed, compels

---

**9.** In Syllabus Point 1 of *Parsons v. McCoy, supra,* we stated: "An order granting a motion to set aside a default judgment made under the provisions of Rules 55(c) and 60(b), R.C.P., is appealable under Code, 58–5–1(i)."

**10.** In *Parsons v. Consolidated Gas Supply Corporation, supra,* we reasoned that since a motion to file a late answer under Rule 6(b)(2) required a showing of excusable neglect, if the defendant lost the motion it would be redundant to require a Rule 60(b) motion once the default was entered.

the conclusion that the eight-month time period begins to run only when the monetary amount is reduced to a judgment. Consequently, we hold that where a plaintiff obtains a default order on an unliquidated claim, the eight-month period set out in Rule 60(b) does not begin to run until there has been a judgment order rendering certain the amount of damages owed.

We are not cited nor have we found an analogous case in another jurisdiction having rules similar to our Rules 55 and 60(b). Ohio's default rule is a unitary procedure, like West Virginia's, and has been construed in several cases.[11] In *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), the Ohio Supreme Court held that an order setting aside a default judgment was an appealable order which comports with our *Parsons v. McCoy* case, *supra.*[12] It also appears that even though there has been no rendition of a monetary amount, Ohio permits an appeal of the refusal to set aside a default order. *Doddridge v. Fitzpatrick*, 53 Ohio St.2d 9, 371 N.E.2d 214 (1978); *Hamilton Watch Co. v. Atlas Container, Inc., supra; Intercity Realty Co. v. Gibson, supra.* It does not appear that the Ohio courts have had occasion to consider when its Rule 60(b) time period begins to run where the default order does not render a monetary judgment.[13]

In adopting our rule, we do not believe that any unfairness results to the plaintiff, because once the defendant fails to file a timely response the plaintiff is in a position to seek a default order. If he promptly moves for a hearing on damages and secures a default judgment, the time for filing a Rule 60(b) motion begins to run. If however he elects to wait before reducing his default to a judgment, the Rule 60(b) eight-month time limitation will not be triggered until the monetary judgment is obtained. This rule may also result in default cases being moved expeditiously to a default judgment rather than languishing on the court calendar.

## II.

### THE MERITS OF SETTING ASIDE THE DEFAULT

The record, taken at the time Wheeling-Pittsburgh moved to set aside the default, reveals several salient facts. First, Mr. George Raynovich, Jr., general counsel of Wheeling-Pittsburgh, received oral notification of the suit on May 12, 1981,[14] only five days after it was accepted by the Secretary of State. The notice was well within the thirty-day answering period. Second, on May 14, 1981, Raynovich dictated an interoffice correspondence to K.L. Kaufman, Wheeling-Pittsburgh's risk manager, which stated:

"TO:  Mr. K.L. Kaufman

Corporate Risk Manager

From: George Raynovich, Jr.

CHARLES J. COURY AND EVELYN C. COURY V. WHEELING–PITTSBURGH STEEL CORPORATION CIVIL ACTION NO. 81–C–176–Ts—CIRCUIT

---

**11.** Ohio Rev.Code Ann. Rule 55 (Page 1982). The Staff Notes under Rule 55 contain this summary:

> "The default procedure under Federal Rule 55 is a *two-step* procedure.... In short, under the Federal rule there is a default *entry* and a second step, the default *judgment.* See, Federal Rule 55(a) and (b).
>
> "In contrast, Rule 55 provides for a *single* step default procedure. Thus, if defendant fails to plead or otherwise defend, plaintiff, after answer time expires, applies to the court for a default judgment. A hearing time is set. After hearing, the court grants a default judgment for a liquidated or an unliquidated sum as the case may be." *Id.* at 280. (Emphasis in original)

**12.** *See* note 9, *supra.*

**13.** Indiana has a unitary Rule 55 like ours and permits an appeal from a default even when the monetary amount has not been set. Because its Rule 60(B) specifically refers to a "default" as being appealable, the one-year time period under Rule 60(B) begins to run from the default order. *Pounds v. Pharr*, 376 N.E.2d 1193 (Ind. App.1978). We have no counterpart "default" language in our Rule 60(B).

**14.** The oral notification was a telephone call to the general counsel's office of Wheeling-Pittsburgh from the C.T. Corporation System. C.T. Corporation had obtained the summons and complaint from the West Virginia Secretary of State as Wheeling-Pittsburgh's agent for process.

COURT OF BROOKE COUNTY, WEST VIRGINIA

Attached are copies of a Complaint which was served upon C T Corporation System on May 7, 1981. A response is due before June 6, 1981.

Will you please forward this to our insurance carrier for action. This is a *Mandolidis* type claim since the Plaintiff is Wheeling-Pittsburgh's employee. Will you please be sure that the insurance company is going to enter a defense so that we may be prepared to enter one if the insurance carrier does not."

That same date, Mr. Kaufman wrote to Mr. Glen K. Dalton, Wheeling-Pittsburgh's insurance broker, as follows:

"Mr. Glen K. Dalton
Assistant Vice President
Alexander & Alexander, Inc.
1200 Porter Building
Pittsburgh, Pennsylvania 15219
RE: CHARLES J. & EVELYN C. COURY
      VERSUS WPSC
Dear Glen:

Pursuant to my telephone conversation with Margaret Ford on Tuesday, May 12, 1981, enclosed are two copies of the Complaint served on us.

A response is due before June 6, 1981. Please note George Raynovich's memo included with the Complaint. It should be forwarded to CNA immediately so that they can coordinate this matter with him. Mr. Raynovich can be contacted at (412) 288-3517.

Due to the seriousness of this matter, it is imperative that we have a timely response from CNA.

**15.** A claim based on the principles of *Mandolidis v. Elkins Industries,* 161 W.Va. 695, 246 S.E.2d 907 (1978).

**16.** The general counsel's remarks in this regard were:

"Q. But your testimony was you have had previous experience with *Mandolitis* cases and on occasion or each case where there was a *Mandolitis* case the insurance company refused coverage?

"A. I have had two other cases in which the insurance company has refused coverage.

"Q. They were *Mandolitis* cases?

Sincerely,

Kenneth L. Kaufman
Corporate Risk Manager"

The position of Wheeling-Pittsburgh personnel at the default hearing was that after sending the suit papers to the insurance broker they heard nothing further from the insurance company and assumed that the insurer would handle the defense.

It is of critical importance that Wheeling-Pittsburgh's general counsel was aware first, that the Courys' suit involved a *Mandolidis* claim [15] as noted in Raynovich's memorandum of May 14, 1981, and second, that on two previous occasions the corporation's insurance carrier denied coverage of *Mandolidis* claims under its policy.[16]

An inquiry as to whether relief from a default judgment should be granted begins with a consideration of whether the Rule 60(b) standard has been met. Rule 60(b) permits relief if it can be shown that the default arose from "[m]istake, inadvertence, surprise, excusable neglect, or unavoidable cause." In *Parsons v. McCoy, supra,* we held that excusable neglect had been shown where the district claims supervisor had opened a property damage claim file under the plaintiff's name. Subsequently, her personal injury suit papers were received and a clerk in the district claims office filed them in the property claim file where they were not discovered until after a default had been entered. Within three days after the entry of the default, a motion was made to set it aside which was granted by the trial court. We affirmed the trial court's ruling in a 3–2 opinion stating:

"A. Yes, and I have litigation pending with insurance companies because I think they are in error in their refusal.

"Q. Those are the only two *Mandolitis* cases you have had besides this?

"A. Yes.

"Q. So that in each *Mandolitis* case you have been acquainted with of the three, two of them were received by the insurance company and they have refused coverage.

"A. Right.

"Q. And both of those cases were before this was filed?

"A. Yes."

"Although there is a conflict in the authorities, the majority of the reported cases appear to hold that where an insurance company has misfiled papers this amounts to excusable neglect on the part of the defendant. Annot., 87 A.L.R.2d 870, 879." *Parsons v. McCoy*, 157 W.Va. at 190, 202 S.E.2d at 636. (Citations omitted)

Excusable neglect was also found in the subsequent case of *Parsons v. Consolidated Gas Supply Corporation, supra.* The defendant had an indemnity clause in its construction contract with a codefendant, which requested that the codefendant assume the defense. Delays ensued, due to the question of whether the indemnity obligation was covered and the defendant's insurance carrier's erroneous belief that the defendant's attorney had an agreement with plaintiff's attorney to file a late answer. The trial court denied the defendant's motion for leave to file a late answer and entered the default order. We made this general statement:

"Under both the West Virginia and Federal Rules of Civil Procedure, there is the necessity to show some excusable or unavoidable cause to explain the delay in answering. Obviously, the stronger the excusable neglect or good cause shown, the more appropriate it is to give relief against the default judgment." 163 W.Va. at 471, 256 S.E.2d at 762.

We also recognized that, where some excusable neglect could be shown, the following factors could be considered in determining whether to vacate the default:

"(1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party." 163 W.Va. at 471, 256 S.E.2d at 762.

Each *Parsons* case discussed points of law relating to default judgments which were contained in our earlier cases:

" 'Inasmuch as courts favor the adjudication of cases on their merits, Rule 60(b) of the West Virginia Rules of Civil Procedure should be given a liberal construction.' Syllabus Point 2, *Hamilton Watch Co. v. Atlas Container, Inc.*, 156 W.Va. 52, 190 S.E.2d 779 (1972)." Syllabus Point 2, *Parsons v. Consolidated Gas Supply Corporation, supra.*

" 'A motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.' Pt. 3, syllabus, *Intercity Realty Co. v. Gibson*, [154 W.Va. 369] [175 S.E.2d 452] (Decided by this Court July 7, 1970)." Syllabus Point 3, *Parsons v. McCoy, supra.*

These rules, however, do not automatically relieve a defendant from the consequences of a default as there still must be some showing of excusable neglect. In both *Parsons* cases there was a showing of excusable neglect.

According to the annotation at 87 A.L.R.2d 870, 874 (1963), there is a considerable division of authority over whether a defendant who timely forwards his suit papers to his insurance carrier may be relieved of a default because his insurance carrier does not file a timely answer. However, the vast majority of these cases did not involve questionable insurance coverage, which is the significant point in the present case.

We believe that before a defendant may invoke the rule that the failure of his insurance carrier to make a timely answer should relieve him of a default he must have a justifiable belief that his carrier will afford coverage under its insurance policy. This was the central issue in *Bethlehem Apparatus Company, Inc. v. H.N. Crowder, Jr., Company*, 242 Pa.Super. 451, 455, 364 A.2d 358, 360 (1976), where the court stated:

"The record shows, however, that this is not a case where a moving party can assert *justifiable* belief that his legal counsel or insurance carrier will take all necessary actions to protect him legally. *See, e.g., Murphy v. Smith*, 415 Pa. 512, 204 A.2d 275 (1964); *Sprouse v. V.F.W. Post 7155*, 237 Pa.Super. 419, 352 A.2d 134 (1975); *Colacioppo v. Holcombe*, 166 Pa.Super. 186, 70 A.2d 452 (1950)."

The facts in *Bethlehem*, as summarized by the court, were not as severe as in the present case:

> "Here, the appellant notified its insurance carrier of the receipt of the appellee's complaint by letter, which stated, in part, that the matter involved was '[p]robably covered in our liability' and that '[t]here was a 20 day response time on [the complaint].' Significantly, the appellant received no answer to this letter from the insurance company. Thus, although the appellant realized that there existed some possibility that the insurance carrier would not be responsible for its defense and that, in any event, a timely response was necessary, it failed to inquire as to the status of its claim or even to seek any assurances from the insurance carrier that it was being represented." 242 Pa.Super. at 455, 364 A.2d at 360.

*See also Baskerville v. Philadelphia Newspapers, Inc.,* 278 Pa.Super. 59, 419 A.2d 1355 (1980); *cf. Cyrus v. Haveson,* 65 Cal.App.3d 306, 135 Cal.Rptr. 246 (1976).

■ In the present case, we do not believe there was any initial showing of excusable neglect. Wheeling-Pittsburgh could not claim a reasonable reliance that it had insurance coverage for the loss alleged in the complaint. As previously noted, its general counsel was aware that the suit involved a *Mandolidis* claim and he was also aware that on two previous occasions the same insurance carrier had refused coverage for a *Mandolidis* claim. According to the general counsel, these refusals to defend resulted in the corporation filing suit against the insurance carrier over the coverage question.

Furthermore, neither the general counsel nor the corporation risk manager who sent the suit papers to the insurance broker made any effort to follow through by seeking some assurance from the insurer that it would defend. While such activity may not be necessary in the ordinary case, it is a necessary ingredient in a case where there have been previous refusals to afford coverage for similar claims. Because Wheeling-Pittsburgh has not demonstrated any excusable neglect for its failure to timely answer, we believe that the trial court abused its discretion in setting aside the default.

Although the trial court's 60(b) order is set aside and the default order is reinstated, Wheeling-Pittsburgh is not foreclosed from contesting the amount of damages. We have spoken to this point in *Farley v. Economy Garage,* 170 W.Va. 425, 294 S.E.2d 279, 281 (1982), where we said: "A default does not admit the amount of unliquidated damages." (Citations omitted) Annot., 15 A.L.R.3d 586, 607 (1967).

Furthermore, it appears that the factual predicate for punitive damages may also be contested. *Florida East Coast Ry. Co. v. McRoberts,* 111 Fla. 278, 149 So. 631 (1933); *American Central Corporation v. Stevens Van Lines, Inc.,* 103 Mich.App. 507, 303 N.W.2d 234 (1981); *Smith v. Sayles,* 637 S.W.2d 714 (Mo.App.1982); *Gallegos v. Franklin,* 89 N.M. 118, 547 P.2d 1160 (1976); 47 Am.Jur.2d *Judgments* § 1186 (1969).

For the foregoing reasons, the decision of the circuit court is affirmed in part as to its holding that the time limitation under Rule 60(b) was not foreclosed; but is reversed in its determination that a showing of excusable neglect had been made.

Affirmed, in part.

Reversed, in part.