341 S.E.2d 832

**Carmel DOTSON, Bud Lumbo and Danny Lee Lumbo**

v.

**SEARS, ROEBUCK & COMPANY, INC., a Corporation.**

**No. 16589.**

Supreme Court of Appeals of West Virginia.

Dec. 18, 1985.

Abrams, Byron, Henderson & Richmond, C. Elton Byron, Jr., and James H. Henderson, II, Beckley, for appellant.

Philip A. LaCaria, Welch, Don Stacey, Beckley, for appellees.

PER CURIAM:

This action is before this Court upon the appeal of Sears, Roebuck & Company, Inc. (hereinafter "Sears"), from the final order of the Circuit Court of McDowell County, West Virginia. Pursuant to that order, entered on June 29, 1984, the circuit court denied Sears' motion to set aside a default judgment.[1] This Court has before it the

---

1. It should be noted that in *Coury v. Tsapis,* 172 W.Va. 103, 304 S.E.2d 7 (1983), this Court recognized, with regard to default judgments under *W.Va.R.Civ.P.* 55, a distinction between a "default" [relating to a judgment upon liability with the amount of damages unliquidated] and a "default judgment" [relating to a judgment upon both liability and damages]. Specifically, we stated in *Coury* that "federal law explicitly recognizes both defaults and default judgments in

petition for appeal, all matters of record and the briefs and argument of counsel.

## I

Sears is a corporation licensed to do business in West Virginia. During the period in question, Sears conducted a business in McDowell County. The appellees, Carmel Dotson, Bud Lumbo and Danny Lee Lumbo, are residents of Wyoming County, West Virginia.

In September, 1982, appellee Dotson purchased from Sears a portable kerosene heater. The appellees allege that, subsequently, during a camping trip in Virginia, the kerosene heater exploded, resulting in personal injury and property damage to the appellees.

The sale of the kerosene heater by Sears was predicated upon a rather complex financial structure. The distributor of the kerosene heater to Sears was AMCA International, with an office in Bowling Green, Kentucky. AMCA International had agreed to defend and save Sears harmless in actions such as the one instituted by the appellees. The kerosene heater was manufactured by the Matsushita Electric Corporation of America. Matsushita had agreed to defend and save AMCA International harmless in actions such as the one instituted by the appellees. Matsushita's attorney was located in New Jersey.

Matsushita was insured by way of Tokio Marine and Fire Insurance Co., Ltd. Tokio maintained an office in New York, New York. Tokio's agent for the handling of actions such as this one was the Underwriters Adjusting Company. The Underwriters Adjusting Company maintained an office (as did Sears) in Chicago, Illinois.

## II

On September 7, 1983, the appellees instituted this action against Sears with regard to the alleged explosion of the kerosene heater. Service of process was accepted upon Sears' behalf by the Secretary of State of West Virginia. *W. Va. Code*, 31–1–15 [1975]. Sears received a copy of the summons and of the complaint at its Chicago, Illinois, office on September 15, 1985. Sears, however, did *not* file an answer within the time (30 days) specified by the West Virginia Rules of Civil Procedure. *See W. Va. R. Civ. P.* 12.

In particular, the record indicates that Sears forwarded a copy of the summons and of the complaint to AMCA International and Matsushita. Matsushita then forwarded a copy of the summons and of the complaint to the Underwriters Adjusting Company.

By affidavit, James Saldak, a "litigation adjuster" for the Underwriters Adjusting Company, stated that on October 13, 1983, he telephoned the appellees' attorney and requested an extension of time in which to file an answer to the appellees' action. Saldak indicated that various excusable or unavoidable delays prevented him from contacting the appellees' attorney prior to October 13, 1983. Saldak further indicated that, although the appellees' attorney advised Saldak during the conversation that he could not agree to an extension, Saldak left the conversation "under the impression" that the appellees' attorney would later comply with Saldak's request. Specifically, as the circuit court found, the appellees' attorney, after talking to Saldak, was to contact co-counsel for the appellees "to determine if there would be a change in the position not to agree to an extension of the time to file an answer...."

The following day, however, the circuit court entered default judgment against Sears upon the issue of liability. As reflected in its final order, the circuit court subsequently declined to set aside that judgment.

## III

Rule 55(b) of the West Virginia Rules of Civil Procedure provides that "[w]hen a

---

that a default relates to the issue of liability and a default judgment occurs after damages have been ascertained." 172 W.Va. at 106, 304 S.E.2d at 10. We also recognized in *Coury,* however,

that such a distinction is not set forth in *W. Va. R. Civ. P.* 55. In the action before this Court, the "default judgment" relates solely to the issue of Sears' liability to the appellees.

party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, judgment by default may be entered. . . ." Rule 60(b) of the West Virginia Rules of Civil Procedure provides a mechanism by which a default judgment may be set aside. *W.Va.R.Civ.P.* 55(c). Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, excusable neglect, or unavoidable cause. . . ."[2]

This Court, in syllabus point 2 of *McDaniel v. Romano*, 155 W.Va. 875, 190 S.E.2d 8 (1972), recognized that "[a]lthough courts should not set aside default judgments or dismissals without good cause, it is the policy of the law to favor the trial of all cases on their merits." *See also Parsons v. McCoy*, 157 W.Va. 183, 192, 202 S.E.2d 632, 638 (1973).

█ Nevertheless, this Court held, in syllabus point 1 of *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970), that "[a] default judgment obtained in accordance with the provisions of Rule 55(b), West Virginia Rules of Civil Procedure, is a valid and enforceable judgment and a motion to set aside such judgment will not be granted unless the movant shows good cause therefor as prescribed in Rule 60(b) of the aforesaid Rules of Civil Procedure." Moreover, in syllabus point 3 of *Intercity Realty Co.*, this Court held that "[a] motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion."[3]

A particularly important action concerning default judgments is *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 256 S.E.2d 758 (1979). In that action, various considerations were set forth relating to the propriety of entering or vacating a default judgment. Syllabus point 3 of *Parsons v. Consolidated Gas Supply Corp.* states:

> In determining whether a default judgment should be entered in the face of a Rule 6(b) motion or vacated upon a Rule 60(b) motion, the trial court should consider: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party.

*See also* syl. pt. 5, *Hinerman v. Levin*, 172 W.Va. 777, 310 S.E.2d 843 (1983).

We discussed the considerations of *Parsons v. Consolidated Gas Supply Corp.* in the subsequent case of *Coury v. Tsapis*, 172 W.Va. 103, 304 S.E.2d 7 (1983). In *Coury*, a personal injury action, the defendant, the Wheeling-Pittsburgh Steel Corporation, forwarded a copy of the complaint to its insurer for the handling of the defense. No answer or other responsive pleading was filed, and the circuit court entered a default judgment, as to liability, against Wheeling-Pittsburgh Steel.

We held, in *Coury*, that the entry of the default judgment was proper. We indicated that, inasmuch as Wheeling-Pittsburgh Steel had failed to make an initial showing of "excusable neglect" for relief from the default judgment, the above four considerations of *Parsons v. Consolidated*

---

**2.** With regard to actions such as the one before this Court, it was stated in *Coury v. Tsapis*, 172 W.Va. 103, 304 S.E.2d 7, 11 (1983), that "we have in our default judgment cases permitted the defendant to utilize a Rule 60(b) motion to attack what amounts to a default on liability where there was no rendition of a monetary judgment against the defendant."

**3.** In syllabus point 2 of *Hamilton Watch Co. v. Atlas Container, Inc.*, 156 W.Va. 52, 190 S.E.2d

779 (1972), this Court stated that "[i]nasmuch as courts favor the adjudication of cases on their merits, Rule 60(b) of the West Virginia Rules of Civil Procedure should be given a liberal construction." *See also Schupbach v. Newbrough*, 173 W.Va. 156, 313 S.E.2d 432, 436 (1984); *Cordell v. Jarrett*, 171 W.Va. 596, 301 S.E.2d 227, 230 (1982); *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 471, 256 S.E.2d 758, 762 (1979); *Toler v. Shelton*, 157 W.Va. 778, 784–85, 204 S.E.2d 85, 89 (1974).

*Gas Supply Corp.* (relating to whether a default judgment should be entered or vacated) were immaterial. 172 W.Va. at 110, 304 S.E.2d at 14. We emphasized, in *Coury*, the fact that Wheeling-Pittsburgh Steel failed to respond in the action under circumstances where Wheeling-Pittsburgh Steel knew that its insurer could dispute the insurer's obligation to defend.

■ In the action before this Court, as in *Coury*, the defendant has failed to make a showing of "excusable neglect" for relief from the default judgment. Nor has the defendant shown mistake, inadvertence, surprise or unavoidable cause. *W.Va. R.Civ.P.* 60(b). The reasoning of the circuit court in denying Sears' motion to set aside the default judgment is clear:

> In the present case, there was no misfiling of papers by an insurance company. The agents of the defendant who received the complaint and summons were trained specifically to handle such matters. [Tokio and the Underwriters Adjusting Company] knew that the answer to the complaint was due within thirty (30) days of service. The defendant relies upon clerical irregularities; however, it does not state the reasons for such irregularities. * * * Excusable neglect is an exception to the Rules; however, the defendant has the burden of proving such excusable neglect. The conduct of the defendant in this case is not excusable or inadvertent....
>
> [D]efendant stipulates that on October 13, 1983, its agents assumed that a two week extension would be granted to file an answer. The defendant made this assumption even though counsel for the plaintiffs advised Saldak that no extension of time would be granted. * * * The defendant did not answer the complaint until November 8, 1983. * * * The defendant's assertion that the counsel for the plaintiffs had granted an open-ended extension is not supported by the affidavits submitted by the defendant in support of the motion to vacate the default judgment....

We concur with that reasoning. *Cf.* annot., 87 A.L.R.2d 870 (1963). The record demonstrates that Sears received a copy of the summons and of the complaint "well within the thirty-day answering period." *Coury, supra,* 172 W.Va. at 111, 304 S.E.2d at 13. AMCA International and the other companies involved in this action handled such matters, as the circuit court found, "on a daily basis."

Accordingly, this Court holds that the circuit court did not abuse its discretion in entering, and refusing to set aside, the default judgment. *See* syl. pt. 3, *Hinerman, supra.* Sears, of course, "is not foreclosed from contesting the amount of damages ..." allegedly sustained by the appellees. *Coury, supra,* 172 W.Va. at 111, 304 S.E.2d at 15.

Accordingly, upon all of the above, the final order of the Circuit Court of McDowell County is hereby affirmed.

Affirmed.