680 S.E.2d 101 (2009)
STATE of West Virginia ex rel. Deborah HARPER-ADAMS, Administratrix of the Estate of Susie May Pendleton Smith, Plaintiff Below, Appellee,
v.
Donna Sue MURRAY, Individually and in her Capacity as Former Administratrix of the Estate of Susie Mae Pendleton Smith; and Onebeacon Insurance Company, a Corporation, Defendants Below
Donna Sue Murray, Appellant.
No. 33730.
Supreme Court of Appeals of West Virginia.
Submitted January 13, 2009.
Decided June 22, 2009.
*103 Richard A. Robb, South Charleston, WV, for Appellant.
Deborah Harper-Adams, pro se.
Keith R. Huntzinger, Dickie, McCamey & Chilcote, Wheeling, WV, for Appellee, One-Beacon Insurance Company.
PER CURIAM.
The instant action is before this Court upon the appeal of Donna Sue Murray [hereinafter "Appellant"], from a March 21, 2007, order entered by the Circuit Court of Kanawha County granting default judgment against her and assessing punitive damages as part of that judgment in lieu of attorneys *104 fees. Herein, the Appellant alleges that it was error for the circuit court to grant default judgment against her, and to assess punitive damages in lieu of attorneys fees.[1] This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the March 21, 2007, order of the Circuit Court of Kanawha County is affirmed in part and reversed in part, and remanded with directions.

I.

FACTUAL AND PROCEDURAL HISTORY
Appellant was appointed administratrix of the estate of her mother, Susie Mae Pendleton Smith, following her mother's death in September, 2000.[2] Appellant served as Administratrix of her mother's estate until she was removed by order of the County Commission of Kanawha County, West Virginia entered on June 18, 2004. Appellant's sister, Deborah Harper-Adams [hereinafter "Appellee"], was thereafter appointed to replace her as administratrix.[3] On June 21, 2005, Appellee filed the instant lawsuit against Appellant alleging various torts concerning the prior administration of the estate.[4] The other defendant, OneBeacon Insurance Company was the surety for Murray's bond as administratrix. Appellant was served with the Summons and Complaint on August 26, 2005. Appellant, who represented herself pro se, never filed an Answer to the Complaint.[5] Appellant alleges that despite the fact that she did not file an Answer, she was in contact with court personnel and opposing counsel throughout the course of the litigation.
Appellee filed a Motion for Default Judgment on October 21, 2005.[6] Before the circuit court could act on the motion, Appellant filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court of the Middle District of Georgia, Columbus Division, *105 on October 28, 2005. The circuit court proceedings were stayed until a Consent Order was entered on September 12, 2006.[7] Once the automatic stay was lifted, the circuit court conducted a hearing on the default judgment motion on September 22, 2006. Appellant was notified of the hearing but did not attend. She alleges that she was unable to attend due to a medical emergency involving an infant for whom she was caring, and that she notified the circuit court of her anticipated absence.[8]
At the hearing, the circuit court awarded default judgment against Appellant as to Count I of the Complaint, for a sum certain of $108,766.00.[9] It also entered default on liability as to Count III of the Complaint, and set a hearing for a writ of inquiry on the Count III damage issues which were not for a sum certain. Appellant attended the hearing on the Count III damages which was conducted on November 29, 2006.[10] At this hearing, the plaintiff orally moved to amend the circuit court's default judgment order on Count I stating that the $108,766.00 awarded in that order was incorrect due to a typographical error and the correct amount was $88,756.00. The court granted the motion and awarded Appellee $88,756.00, being a sum certain under Count I of the Complaint.
The court then conducted the inquiry of damages on Count III of the Complaint. The circuit court specifically found that there were three assets remaining in the decedent's Estate. Those assets consisted of the decedent's home, coin collection and the remainder of the net proceeds of the distribution of the $20,000.00 bond after the expenses and fees were paid by the Estate. The court ordered that a constructive trust be imposed over the Appellant's one-fifth interest in the remaining assets of the Estate[11] and ordered that the value of her interest in these assets be used to satisfy the judgment awarded in this case. The court directed that the coin collection be turned over to the Appellee, as Administratrix of the Estate. Lastly, the circuit court ordered that punitive damages were appropriate, and awarded punitive damages in the amount of $50,000.00 in lieu of attorney's fees.

II.

STANDARD OF REVIEW
A judgment by default may be entered in West Virginia pursuant to the guidelines of Rule 55 of the West Virginia Rules of Civil Procedure [1998].[12] "Appellate review of the propriety of a default judgment *106 focuses on the issue of whether the trial court abused its discretion in entering the default judgment." Syl. Pt. 3, Hinerman v. Levin, 172 W.Va. 777, 310 S.E.2d 843 (1983). "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973). Mindful of these standards, we proceed forward to consider the Appellant's arguments.

III.

DISCUSSION
This appeal involves an entry of default as to liability and an entry of default judgment as to the issue of damages. We have traditionally recognized a distinction between the two. In Syl. Pt. 2, Coury v. Tsapis, 172 W.Va. 103, 304 S.E.2d 7 (1983), we held that "a default relates to the issue of liability and a default judgment occurs after damages have been ascertained." For reasons explained below, we affirm the circuit court's entry of default as to liability. However, we reverse the entry of the default judgment awarding damages, and remand with directions.[13]

A. Entry of Default Determining Liability
Appellant alleges that default was improper because the Appellant had multiple communications with the circuit court and opposing counsel. Specifically, Appellant alleges that she had direct verbal communication with court personnel throughout the course of the litigation.[14] Appellant also alleges that prior to the September 22, 2006, hearing on the Motion for Default Judgment, she notified the court of a family medical emergency involving an infant for whom she was caring, and her anticipated absence. She asserts that despite this notification, the circuit court proceeded on with the hearing, entering default judgment against her on Count I and a default on Count III. Following entry of this order, Appellant appeared personally at the inquiry of damages on Count III of the Complaint.
Rule 55(a) requires that when a party against whom an entry of default is sought has "failed to plead or otherwise defend as provided for by these rules, and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." In the case before us, Appellant was served with the Summons and Complaint via certified mail on August 26, 2005. Pursuant to Rule 12 of the West Virginia Rules of Civil Procedure, Appellant's Answer to the Complaint was due no later than 30 days after the service of the summons. As of October 21, 2005, the date the Motion for Default Judgment was filed, Appellant made no request for an extension of time to file an Answer, and made no appearance before the Court or otherwise *107 filed any pleadings in this action.[15]
We have held that certain forms of informal communication between litigants will require that a defaulting party be given notice before unliquidated damages can be assessed under Rule 55(b)(2) of the West Virginia Rules of Civil Procedure. Cales v. Wills, 212 W.Va. 232, 241, 569 S.E.2d 479, 488 (2002).[16] However, we have specifically noted that this type of communication will not prevent entry of a default as to liability. Id. (citing 10A Charles Alan Wright et al., Federal Practice and Procedure: Civil 3d § 2686, at 41 ("[I]t must be remembered that an appearance, without any further attempt to defend on the merits, will not keep a party from being held in default for failure to plead or otherwise defend; it merely activates the special notice and judicial review protections provided in the rule.")).[17] While there was contact between the Appellant, who represented herself pro se in the underlying action, and the circuit court's staff who advised Appellant on several occasions that she needed to file an Answer and that she should retain counsel, the circuit court afforded the Appellant ample opportunity to retain counsel and continued hearings several times in order to accommodate her attempts to retain counsel. The facts are undisputed that although Appellant was served with the Complaint and knew of the lawsuit, she failed to file an Answer or other responsive pleading in the action. Thus, we believe the circuit court's entry of default on liability was appropriate with regard to both Count I and III of the Complaint.

B. Default Judgment Awarding Damages
Although we find that the circuit court properly entered default as to liability against the Appellant based upon her failure to file an Answer or other responsive pleading, we find that the circuit court erred in awarding default judgment on Count I (the alleged sum certain amount) and Count III (the alleged unliquidated damages count) of the Complaint.
Appellee's Motion for Default Judgment contended that Count I of the Complaint, alleging embezzlement, conversion and breach of fiduciary duty, was for a sum certain of $228,500.00, together with pre- and post-judgment interest. However, the motion and supporting affidavits do not demonstrate *108 how the amount of damages can be ascertained without resorting to extrinsic facts. In its September 25, 2006, order granting default judgment on Count I of the Complaint, the circuit court awarded "sum certain" damages in the amount of $108,766.00. However, the Court gave no explanation for how it arrived at that figure. Following the entry of that order, that figure was subsequently modified by the Appellee. The circuit court's March 21, 2007, order amended the default judgment amount awarded as sum certain, stating that "due to a typographical error, this amount should be $88,756.00, and Plaintiff orally moved at the hearing to amend the prior judgment amount to this amount."
We have traditionally held that
[t]he term "sum certain" under West Virginia Rules of Civil Procedure Rule 55(b)(1) contemplates a situation where the amount due cannot be reasonably disputed, is settled with respect to amount, ascertained and agreed upon by the parties, or fixed by operation of law. A claim is not for a "sum certain" merely because the claim is stated as a specific dollar amount in the complaint, verified complaint, or affidavit.
Syl. Pt. 3, Farm Family Mutual Ins. Co. v. Thorn Lumber Company, 202 W.Va. 69, 501 S.E.2d 786. Typical "sum certain" situations covered by Rule 55(b)(1) include actions on money judgments, negotiable instruments, or similar actions where the damages can be determined without resort to extrinsic proof. Id. at 74, 501 S.E.2d at 791. If the damages sought by the party moving for the default judgment are for a sum certain, or an amount which can be rendered certain by calculation, no evidentiary hearing on damages is necessary and the circuit court may proceed to enter a "default judgment" on all issues in the case. Id. at 73, 501 S.E.2d 786 at 790.[18]
While we recognize that circuit courts are generally not required to conduct an evidentiary hearing on damages that are for a sum certain, circuit courts are still required to make the requisite findings within their orders granting default judgment demonstrating, for purposes of appellate review, how the amount entered can be rendered certain by calculation. The circuit court's orders fail to address precisely how the $88,756.00 figure was ultimately derived. In her Motion for Default Judgment, the Appellee originally requested an award of $228,500.00, a figure three times that which was ultimately awarded. Following that, the circuit court's first order dated September 25, 2006, entered default on liability against Appellant as to Count I of the Complaint, for a sum certain of $108,766.00, without explaining how that figure was derived. The circuit court subsequently amended that amount, pursuant to Appellee's oral request at the hearing, to the final sum certain award of $88,756.00. The lack of information contained in the circuit court's orders leaves this Court no way to assess whether the amount awarded is in fact a sum certain, or whether the circuit court abused its discretion in entering sum certain damages in that amount. Because the circuit court's two default judgment orders as to Count I of the Complaint are bereft of adequate findings on this issue, we reverse them accordingly.
Furthermore, we find error in the circuit court's default judgment order on Count III of the Complaint awarding the Appellee punitive damages. The order does not specify any basis whatsoever for this award. This Court set forth the factors to be considered in awarding punitive damages in Garnes v. Fleming Landfill, Inc., 186 W.Va. 656, 413 S.E.2d 897 (1991).[19] Herein, the *109 circuit court simply did not make the necessary findings required by Garnes in order to justify an award of punitive damages. Specifically, the circuit court made no findings regarding the reprehensibility of defendant's conduct or why such conduct was so willful, wanton and malicious as to warrant punishment by way of punitive damages. It also made no findings regarding whether there was a reasonable relationship of the amount awarded to the actual harm, or the financial position of the defendant. Nor did the circuit court make any findings regarding the award of punitive damages in lieu of attorneys fees. The findings in the Order simply state that Appellee had requested punitive damages in lieu of attorneys fees, and that "punitive damages in lieu of attorney fees is acceptable." The failure of the court to make the necessary findings required by Garnes constitutes reversible error.
Moreover, to the extent that the circuit court awarded punitive damages in lieu of attorney's fees in this case, we find that such action also constitutes reversible error. In Hayseeds v. State Farm, 177 W.Va. 323, 352 S.E.2d 73 (1986), this Court discussed attorney's fees and punitive damages, and pointed out, in dicta, that punitive damages are often awarded to off-set litigation expenses.[20] Following that decision, this Court also held that because punitive damages are designed in part to subsidize litigation costs, a court's refusal to award attorneys fees where work had been done to support the theories justifying punitive damages was appropriate. Muzelak v. King Chevrolet, Inc., 179 W.Va. 340, 368 S.E.2d 710 (1988). We wish to make it clear to our circuit courts that the language enunciated by Justice Neely in Hayseeds v. State Farm, and our prior decision in Muzelak v. King Chevrolet, Inc., should not be interpreted by our circuit courts as implied authority to grant such punitive damages awards in lieu of attorney's fees. Indeed, we have long held that while there are similarities between the criteria for punitive damages and the criteria for an award of attorney's fees, they are two separate and distinct issues that must be addressed separately. Midkiff v. Huntington National Bank West Virginia, 204 W.Va. 18, 19, 511 S.E.2d 129, 130 (1998).
Orders of circuit courts necessarily must contain requisite findings of fact and conclusions of law in entering default judgment orders so that meaningful and adequate appellate review is possible. In the case sub judice, the circuit court's default judgment orders simply do not contain the requisite information necessary for this Court to properly review the circuit court's decision.

IV.

CONCLUSION
In conclusion, we find that the circuit court properly entered default as to liability against the Appellant based upon her failure to file an Answer or other responsive pleading. However, because we find that the circuit court's orders lacked findings of fact and *110 conclusions of law permitting adequate appellate review of the default judgment orders, we reverse the circuit court's orders awarding default judgment and remand with directions to reconsider the damages issues in accordance with this decision. Accordingly, the March 21, 2007, order of the Circuit Court of Kanawha County, is affirmed in part and reversed in part, and remanded with directions.
Affirmed in Part, Reversed in Part, and Remanded.
NOTES
[1] Deborah Harper-Adams, [hereinafter "Appellee"], has not filed an appearance nor submitted a response brief in this matter. OneBeacon Insurance Company, a defendant below, has also not filed an appearance or response brief herein.
[2] By order of the County Commission of Kanawha County, West Virginia entered on November 29, 2000, Appellant was appointed Administratrix to serve under such bond in the amount of $20,000.00 issued by OneBeacon Insurance Company as surety thereon.
[3] Susie Mae Pendleton Smith left as her heirs at law in accordance with the laws of the State of West Virginia her four surviving children Deborah Harper-Adams, Donna Sue Murray, Michael L. Pendleton, and Sharon Pendleton and her grandchild Kendall L. Moore, who is the sole heir of predeceased daughter Margaret Moore. Deborah Harper-Adams' residence is believed to be Muscogee County, Georgia.
[4] It is alleged that Appellant collected the valuable personal property of the decedent, reduced it to cash, took it for her own use and benefit, removed it from the State of West Virginia and absconded with it. Among other things, decedent was the owner of an Individual Retirement Account held at Fidelity Investments in the approximate amount of $88,766.00, which had the estate as the beneficiary. Upon her removal as Administratrix, Appellant was ordered to prepare a full and complete accounting of all assets of the estate. It is alleged that she failed and refused to transfer such assets to the Appellee, the new Administratrix.

Specifically, Count I of the Complaint alleges that Appellant embezzled and converted assets from the estate and breached her fiduciary duty as administratrix. However, Count I does not specify a particular amount of damages or particular assets. Rather, Count I generally seeks compensatory, consequential, incidental and punitive damages as can be proven at trial, together with interest, attorney's fees and costs. Count II of the Complaint alleges that OneBeacon is responsible for all judgments against the Appellant up to and including the face amount of the bond, and that a constructive trust should be imposed upon Appellant's interest in the Estate. Count III of the Complaint alleges that Appellant willfully, intentionally and fraudulently embezzled the assets of the Estate, and accordingly seeks the imposition of a constructive trust on Appellant's one-fifth interest in the Estate.
[5] OneBeacon Insurance Company was served with the Complaint and filed its Answer and Cross-Claim on September 1, 2005.
[6] In her Motion for Default Judgment, Appellee specifically requested default judgment against Appellant on Count I of the Complaint in the sum certain amount of $228,500.00, plus interest and costs. Additionally, Appellant requested a default on liability against Appellant on Count III of the Complaint, stating that the amount of damages sought on that claim was not a sum certain. Two affidavits signed by Deborah Harper-Adams and Ariella Silberman were submitted in support of the Motion for Default Judgment.
[7] The Bankruptcy case was dismissed by order entered November 14, 2006.
[8] In the circuit court's order dated March 21, 2007, the court states that from the time the Complaint was filed there was contact between the Appellant and the circuit court's staff, who advised the Appellant on several occasions that she needed to file an Answer and that she should retain counsel. The order states that the Appellant was afforded ample opportunity to retain counsel and hearings were continued several times in order to accommodate Appellant's attempts to retain counsel.
[9] The circuit court's order gives no explanation for how it arrived at the $108,766.00 award.
[10] According to the circuit court's March 21, 2007, order, the Appellant attended the hearing, but still had not filed an Answer or otherwise responsive pleading.
[11] The circuit court provided that an attorney was to be appointed as special commissioner for the purpose of executing a deed conveying Appellant's one-fifth interest in the decedent's domicile, in equal shares, to the remaining heirs of the Estate. In order to ascertain the credit owed to the Appellant, the circuit court further ordered that the decedent's domicile be appraised by a licensed real estate appraiser. Appellant was also ordered to obtain an appraisal of the decedent's coin collection.
[12] Rule 55 of the West Virginia Rules of Civil Procedure states, in pertinent part:

(a) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
(b) Judgment. Judgment by Default May be Entered as Follows:
(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the court upon request of the plaintiff and upon affidavit of the amount due shall direct the entry of judgment by the clerk for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant, incompetent person, or convict.
(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant, incompetent person, or convict unless represented in the action by a guardian, guardian ad litem, committee, conservator, curator, or other representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary.
(c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).
[13] Appellant asserts thirteen assignments of error. Because the first three issues presented are dispositive of this case, we need not address the other issues Appellant has raised.
[14] Appellant alleges that she also had verbal communication with Appellee's counsel during the course of litigation. However, because the Appellee has not filed a response herein, and because the record does not reflect what, if any, type of communication occurred between the parties' counsel prior to the entry of default judgment, we cannot verify that such communication did in fact occur.
[15] From the record, it appears that Appellant has never filed an Answer or other responsive pleading in this matter.
[16] The term "appeared in the action," for purposes of a default judgment under Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, is quite different from an appearance for other purposes. Colonial Insurance Company v. Barrett, 208 W.Va. 706, 709, n. 2, 542 S.E.2d 869, 872, n. 2 (2000). We stated in Farm Family Mutual Ins. Co. v. Thorn Lumber Co., 202 W.Va. 69, 75 n. 9, 501 S.E.2d 786, 792 n. 9 (1998):

An appearance for purposes of Rule 55(b)(2) may consist only of letters or conversations, while a general appearance sufficient to waive an objection to personal jurisdiction requires a greater showing of the defendant's acceptance of the court's jurisdiction. This liberal construction of the term allows for the resolution of litigation on its merits, not technical pleading rules. See, e.g., Lutomski v. Panther Valley Coin Exchange, 653 F.2d 270, 271 (6th Cir. 1981)(per curiam)(conversations between defendant's and plaintiff's counsel concerning suit sufficient to constitute appearance); Charlton L. Davis & Co., P.C. v. Fedder Data Center, Inc., 556 F.2d 308, 309 (5th Cir. 1977)(letters and phone calls from defendant's counsel constituted appearance); H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 690-92 (D.C.Cir. 1970)(per curiam)(settlement discussions constituted appearance.). See generally, James W. Moore, 10 Moore's Federal Practice, 55.21[2][b][I] (Matthew Bender 3d. ed.).
This Court has also recognized that:
[f]or purposes of the requirement for notice to a defaulting party, prior to a hearing on the default, pursuant to Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, an "appearance" by an otherwise defaulting party may consist of any communication to an opposing party that demonstrates either an interest in the pending litigation, or actual notice of the litigation. The communication may be made in written or oral form.
Syl. Pt. 5, Cales v. Wills, 212 W.Va. 232, 569 S.E.2d 479.
[17] However, pursuant to Rule 55(c) of the West Virginia Rules of Civil Procedure [1998], "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Appellant points out that because counsel was obtained just prior to the expiration of the time for appeal, Appellant never filed a Motion to Set Aside Default Judgment before the circuit court.
[18] A default judgment covered by Rule 55(b)(2) "applies to cases where the amount sued for is not a sum certain. In this situation, after a default is entered, a further hearing is required in order to ascertain the damages." Farm Family Mutual Ins. Co. v. Thorn Lumber Company, 202 W.Va. 69, 73, 501 S.E.2d 786, 790 (1998)(quoting Coury v. Tsapis, 172 W.Va. 103, 304 S.E.2d 7).
[19] In Garnes, we held that:

When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:
(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.
(2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.
(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.
(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.
(5) The financial position of the defendant is relevant.
Syl. Pt. 3, 186 W.Va. 656, 413 S.E.2d 897.
[20] In Hayseeds, Justice Neely recognized, in dicta, that "several courts have held that, even in the absence of a statutory or contractual provision, attorneys' fees may be awarded to the claimant when the insurer has acted in bad faith, wantonly, or for an oppressive reason." 177 W.Va. 323, 329, 352 S.E.2d 73, 79.