569 S.E.2d 479

**Bobby CALES, Plaintiff Below, Appellee,**

**National Union Fire Insurance Company Of Pittsburgh, Pa., Appellant,**

v.

**Mark Steven WILLS, Defendant Below, Appellee.**

**No. 30109.**

Supreme Court of Appeals of West Virginia.

Submitted May 1, 2002.

Decided June 28, 2002.

Concurring Opinion of Justice Albright July 3, 2002.

Concurring and Dissenting Opinion of Justice McGraw July 11, 2002.

Ancil G. Ramey, Steptoe & Johnson, Charleston, for Appellant, National Union Fire Insurance Company.

E. Kent Hellems, Law Office of E. Kent Hellems, Hinton, Benny G. Jones, Law Office of Benny G. Jones, Beckley, for Appellee, Bobby Cales.

DAVIS, Chief Justice.

National Union Fire Insurance Company, appellant/defendant below (hereinafter referred to as "National"), appeals from an order of the Circuit Court of Summers County denying National's motion to set aside a default and default judgment. The circuit court had awarded a default and default judgment in favor of Bobby Cales, appellee/plaintiff below (hereinafter referred to as "Mr. Cales"), and against National, in the amount of $113,734.19, plus post-judgment interest. National has assigned several errors to the circuit court's denial of its motion to set aside the default and default judgment. After reviewing the briefs and record in this case, we affirm the circuit court's entry of default as to liability. However, we reverse the entry of the default judgment awarding damages.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On October 18, 1997, Mr. Cales sustained serious injuries, including a fractured left leg, when he was assaulted while performing his duties as a police officer for the City of Hinton. Specifically, Mr. Cales was assaulted by Mark Steven Wills, appellee/defendant below (hereinafter referred to as "Mr. Wills"), after he observed Mr. Wills run a stop sign and then executed a traffic stop of Mr. Wills' vehicle. As a result of the injuries he received, Mr. Cales filed a lawsuit against Mr. Wills on October 19, 1998.

Subsequently, Mr. Wills' insurance carrier, Dairyland Insurance Company (hereinafter referred to as "Dairyland"), filed a separate declaratory judgment action seeking a ruling as to whether the injuries sustained by Mr. Cales involved Mr. Wills' vehicle such that they would fall within the liability coverage provided under Mr. Wills' automobile insurance policy. The circuit court concluded that Mr. Cales' injuries did in fact arise from the operation of Mr. Wills' vehicle. As a result of this ruling, Dairyland offered to pay Mr. Cales the full policy limit of Mr. Wills' liability coverage, which equaled $20,000.00. Additionally, Dairyland sought a waiver of subrogation from the City of Hinton's underinsured motorist insurance carrier, National.

Although Dairyland paid to Mr. Cales the limits of Mr. Wills' policy, the case against Mr. Wills nevertheless proceeded to trial for a determination of both liability and damages. A bench trial was held on March 24, 2000,[1] but National was not represented. On September 14, 1999, a summons and a copy of the complaint filed against Mr. Wills had been served on the Secretary of State on behalf of National. National was served with process through the Secretary of State's office on September 23, 1999. However, National failed to answer the complaint. Also on September 14, 1999, Mr. Cales notified National's representative, AIG Claims, Inc., of the lawsuit against Mr. Wills and requested a waiver of subrogation against Mr. Wills' insurer. In a letter dated September 15, 1999, AIG responded to the waiver request by indicating that Mr. Cales could proceed to

---

1. Mr. Wills did not personally attend the trial nor was he represented by counsel.

settle the claim against Mr. Wills under the terms deemed appropriate.

Prior to the calling of any witnesses at the trial, Mr. Cales specifically advised the court that National was in default as it had failed to file an answer to the complaint. Accordingly, the circuit court ruled that National was in default. Mr. Cales then called several witnesses to testify on the issues of liability and damages. After the evidence was presented, the circuit court returned a verdict in favor of Mr. Cales and assessed damages in the amount of $133,734.19. The circuit court then ruled that, because Mr. Wills' insurance carrier had tendered its policy limits of $20,000.00, National, as the underinsured motorist insurance provider, was liable to Mr. Cales for the balance of the damages. In accordance with this ruling, the circuit court imposed a default judgment against National in the amount of $113,734.19, plus post-judgment interest.

On September 13, 2000, National moved to set aside both the default and the default judgment. By order entered May 3, 2001, the circuit court denied National's motion. It is from this ruling that National now appeals.

## II.

## STANDARD OF REVIEW

■ In this case, we are asked to review the circuit court's ruling on National's motion, which was filed in accordance with Rule

60(b) of the West Virginia Rules of Civil Procedure,[2] to set aside the default and default judgment. It is well-settled that "[a] motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C. P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. pt. 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974). *See also* Syl. pt. 1, *Jackson Gen. Hosp. v. Davis*, 195 W.Va. 74, 464 S.E.2d 593 (1995) (same). Similarly, "[a]ppellate review of the propriety of a default judgment focuses on the issue of whether the trial court abused its discretion in entering the default judgment." Syl. pt. 3, *Hinerman v. Levin*, 172 W.Va. 777, 310 S.E.2d 843 (1983). *See also* Syl. pt. 3, *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970) ("A motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion."). We have also held that "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. pt. 2, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). With these considerations

2. Rule 60(b) of the West Virginia Rules of Civil Procedure states:

*Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective

application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

in mind, we proceed to address the issues before us.

## III.

## DISCUSSION

■ This appeal involves a default as to liability and a default judgment as to the issue of damages. In *Coury v. Tsapis*, 172 W.Va. 103, 304 S.E.2d 7 (1983), we recognized the distinction between a default and a default judgment. In *Coury* we observed, and we now hold, that "a default relates to the issue of liability and a default judgment occurs after damages have been ascertained." 172 W.Va. at 106, 304 S.E.2d at 10. Therefore, we will discuss the default judgment entered in this case separately from the default as to liability.

### A. *Default Judgment Awarding Damages*

With respect to the default judgment awarding damages against National, we are asked to determine whether the circuit court erred in entering the judgment when National had not received notice of any proceedings related to the award of damages against it. National argues that the default judgment should be set aside due to the lack of notice. Mr. Cales, on the other hand, contends that (1) National was not entitled to notice as it failed to make an appearance in the civil action; and (2) due to the nature of the damages awarded, there was no requirement of notice to National.

The issues described above directly involve Rule 55(b) of the West Virginia Rules of Civil Procedure,[3] which expressly addresses default judgments. Rule 55(b) contains different procedural requirements for default judgments awarding sum certain damages, *see* W. Va. R. Civ. P. Rule 55(b)(1), and those awarding other types of damages, *see* W. Va. R. Civ. P. Rule 55(b)(2). For the purposes of the instant proceeding, we are concerned with the differences in these two provisions as they relate to notice to a defaulting party. Consequently, we pause to briefly identify the different notice requirements of these two rules.

Rule 55(b)(1) addresses actions involving damages that are a "sum certain or ... a sum which can by computation be made certain," and instructs the court to "direct the entry of judgment by the clerk" in such circumstances.[4] We have previously held, in syllabus point 1 of *Coury v. Tsapis*, 172 W.Va. 103, 304 S.E.2d 7 (1983), that

> Rule 55(b)(1) of the West Virginia Rules of Civil Procedure relates to cases where the amount sued for is a sum certain or which can be rendered certain by computation. Upon a default in this category of cases, the court can enter a judgment not only as to liability but also to the amount due.

Because Rule 55(b)(1) applies only when the damages are a sum certain, or an amount which can be made certain by calculation, there clearly is no need for an evidentiary

---

3. Rule 55(b) states:
   (b) *Judgment.*—Judgment by default may be entered as follows:
   (1) By the clerk.—When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the court upon request of the plaintiff and upon affidavit of the amount due shall direct the entry of judgment by the clerk for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant, incompetent person, or convict.
   (2) By the court.—In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant, incompetent person, or convict unless represented in the action by a guardian, guardian ad litem, committee, conservator, curator, or other representative who has appeared therein. If the party against whom judgment by default

is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary.

4. It should be noted, however, that the entry of such a judgment by the clerk may be made only if the defaulting party is not "an infant, incompetent person, or convict." W. Va. R. Civ. P. 55(b)(1). For the full text of Rule 55(b)(1), see *supra* note 3.

hearing to ascertain the amount of damages. We recognized this fact in *Farm Family Mut. Ins. Co.,* 202 W.Va. at 73, 501 S.E.2d at 790 (1998), wherein we stated that

> if the damages sought by the party moving for a default judgment are for a sum certain, or an amount which can be rendered certain by calculation, *no evidentiary hearing on damages is necessary* and the circuit court may proceed to enter a "default judgment" on all issues in the case.

(Emphasis added). *See also* Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* 914 (2002) (discussing Rule 55(b)(1) and stating "[i]f the damages sought by the party moving for a default judgment are for a sum certain, or an amount which can be rendered certain by calculation, no evidentiary hearing on damages is necessary and the trial court may proceed to enter a default judgment on all issues in the case." (footnote omitted)). It follows, therefore, that because there is no need for a hearing to determine the amount of damages, there likewise is no requirement for notice to the defaulting party.

■ As presently stated, our rule 55(b) is nearly identical to its federal counterpart. There is similarly no requirement of notice to a defaulting party prior to the entry of a judgment pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure. *See, e.g., Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 690 (9th Cir.1988) (acknowledging that notice is not necessary under Rule 55(b)(1)); *Port–Wide Container Co., Inc. v. Interstate Maint. Corp.,* 440 F.2d 1195, 1196 (3d Cir.1971) (per curiam) (recognizing, implicitly, that notice is not required by Rule 55(b)(1)); *Menier v. United States,* 405 F.2d 245, 247 n. 2 (5th Cir.1968) (stating "[u]nder Rule 55(b)(1) judgment for a sum certain can be entered by the clerk against a defaulted defendant without notice."). Based upon the foregoing discussion, we expressly hold that generally, under Rule 55(b)(1) of the West Virginia Rules of Civil Procedure, when the damages sought by a plaintiff involve a sum certain or a sum which can by computation be made certain, a judgement by default may be entered against a party who has defaulted as to liability without prior notice to that party.

■ Rule, 55(b)(2), on the other hand, addresses the entry of a default judgment where the amount of damages is *not* a sum certain. Under these circumstances, "[a] trial court is required to hold a hearing in order to ascertain the amount of damages." Cleckley, *supra,* at 917. More importantly, Rule 55(b)(2) expressly requires notice to a party against whom a default judgment is sought, provided that the party has appeared in the action. In this regard, the rule states "[i]f the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." In other words, notice is required under Rule 55(b)(2) before there is a hearing to determine unliquidated damages against a party who has made some type of appearance in the proceeding. *See* Syl. pt. 1, *Farm Family Mut. Ins. Co. v. Thorn Lumber Co.,* 202 W.Va. 69, 501 S.E.2d 786 ("Where a default judgment has been obtained under Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, a trial court is required to hold a hearing in order to ascertain the amount of damages if the plaintiff's claim involves unliquidated damages."); *Daniels v. Hall's Motor Transit Co.,* 157 W.Va. 863, 865, 205 S.E.2d 412, 413 (1974) ("The purpose of this Rule is to provide a party defendant with a timely opportunity to urge reasons against entry of default judgment."). In accordance with the express language of Rule 55(b)(2) and the foregoing authorities, we hold that pursuant to Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, when the damages sought by a plaintiff involve damages other than a sum certain or a sum which can by computation be made certain, a defaulting party who has appeared in the action must be provided notice of the hearing to determine the amount of unliquidated damages to be assessed.

Having reviewed the notice requirements of Rules 55(b)(1) and (2), we proceed to consider whether the failure to provide Na-

tional with notice in the instant case required the default judgment against it to be overturned. Because our discussion of the application of Rule 55(b)(2) to the case *sub judice* contains material that is relevant to understanding our examination into the application of Rule 55(b)(1) to the instant facts, we begin our analysis with Rule 55(b)(2).

1. **Rule 55(b)(2).** While it is clear that under Rule 55(b)(2) a defaulting party is entitled to notice of a hearing to determine unliquidated damages, such notice is required only when the defaulting party has appeared in the action. *See* W. Va. R. Civ. P. 55(b)(2) (stating, in relevant part, "[i]f the party against whom judgment by default is sought *has appeared in the action*, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." (emphasis added)).[5] National argues that it made an appearance as contemplated by Rule 55(b)(2), and, thus, it should have been given notice of the hearing to determine default damages.[6]

■■■ This Court has recognized that "[t]he term 'appeared in the action,' for purposes of a default judgment under Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, is quite different from an appearance for other purposes[.]" *Colonial Ins. Co. v. Barrett*, 208 W.Va. 706, 709 n. 2, 542 S.E.2d 869, 872 n. 2 (2000). In the single syllabus of *Daniels v. Hall's Motor Transit Co.*, 157 W.Va. 863, 205 S.E.2d 412 (1974), we

addressed the issue of appearance under Rule 55(b)(2) as follows:

Where a party defendant files a written stipulation extending the time for filing an answer, or indicates interest in pending litigation against him by any other written matter of record in the court file signed by the party, his counsel, or his representative, the party "has appeared" within the contemplation of Rule 55(b)(2), R.C.P. and is entitled to notice of an application for default judgment.

Although *Daniels* focused on communications found in the record, it is generally acknowledged that "[a]n appearance [of a party in a litigation] for purposes of Rule 55(b)(2) may consist only of letters or conversations between the parties." Cleckley, *supra*, at 915 (discussing Rule 55(b)(2)) (footnote omitted).[7] *See also, H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D.C.Cir.1970) (per curiam) (concluding that letters between parties in normal effort to resolve dispute was an appearance for purposes of Rule 55(b)(2)); *FROF, Inc. v. Harris*, 695 F.Supp. 827 (E.D.Pa.1988) (vacating default judgment due to lack of notice based upon appearance in form of a single letter from defendant's attorney to plaintiff's attorney); *Dalminter, Inc. v. Jessie Edwards, Inc.*, 27 F.R.D. 491 (S.D.Tex.1961) (finding defendant's letter to plaintiff was an appearance). *See generally,* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2686, at 45 (1998) ("[I]n order to ensure defendant an opportunity to defend against

---

**5.** For full text of Rule 55(b)(2), see *supra* note 3.

**6.** We have cautioned litigants that a Rule 55(b)(2) issue must be raised at the trial court level. *See* Syl. pt. 4, *Hartwell v. Marquez*, 201 W.Va. 433, 498 S.E.2d 1 (1997) ("The failure to provide a party against whom judgment of default is sought with notice of the application for judgment as required by Rule 55(b)(2) of the W. Va. Rules of Civil Procedure renders the subsequent default judgement voidable, but such judgement is not void. Accordingly, the issue of lack of notice is not properly raised on appeal unless it was first raised below."). In the instant case, National properly raised the Rule 55(b)(2) issue below.

**7.** The authors of this handbook point out that in *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970), this Court disapproved of

oral communication as satisfying the appearance requirement of Rule 55(b)(2). Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* 915 n. 75 (2002). However, the authors note that, "[i]n view of the broad and liberal approach adopted by the Supreme Court for the phrase 'appeared in the action,' in the case of *Farm Family Mut. Ins. Co. v. Thorn Lumber Co.*, 202 W.Va. 69, 501 S.E.2d 786 (1998), it is doubtful that the position taken in *Intercity Realty* is still good law." *Id.* (citations omitted). We agree with this observation and disapprove of the language in *Intercity Realty* suggesting that oral communication does not satisfy the appearance requirement of Rule 55(b)(2).

plaintiff's application [for default judgment], a court usually will try to find that there has been an appearance by defendant, which has the effect of requiring that notice of the application for a default be given." (footnote omitted)). Based upon these authorities, we hold that for purposes of the requirement for notice to a defaulting party prior to a hearing on the default, pursuant to Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, an "appearance" by an otherwise defaulting party may consist of any communication to an opposing party that demonstrates either an interest in the pending litigation, or actual notice of the litigation. The communication may be made in written or oral form.

■ National bases its appearance on the letter sent by its representative, AIG, to Mr.' Cales on September 15, 1999. Mr. Cales contends that AIG was not a representative of National; therefore, National made no communication to him prior to the entry of default judgment. This contention is without merit. The letter forwarded by AIG specifically stated: "AIG Claim Services, Inc. is the authorized representative of National Union Fire Insurance Company of Pittsburgh, PA[.]" Consequently, we must conclude that, for Rule 55(b)(2) purposes, an appearance was made by National.

Because we have found that National made an appearance as contemplated under Rule 55(b)(2), it follows that National should have received notice of the proceeding at which the default judgment was to be addressed, provided that the default judgement was, in fact, awarded pursuant to Rule 55(b)(2). Mr. Cales argues that the default judgment was not entered under Rule 55(b)(2), but was granted pursuant to Rule 55(b)(1), which does not include a notice requirement. Consequently, before deciding that the default judgment should be set aside due to the absence of notice to National, we must consider whether the judgment was properly entered under Rule 55(b)(1).

2. **Rule 55(b)(1).** Mr. Cales argues that the default damages were awarded under Rule 55(b)(1).[8] Therefore, the notice re-

quirement under Rule 55(b)(2) was unnecessary. As reflected above, pursuant to Rule 55(b)(1), notice to a party who has defaulted as to liability is not required when default damages are sought that involve a sum certain. This Court explained the meaning of "sum certain" in syllabus point 3 of *Farm Family Mutual Insurance Co.* as follows:

> The term "sum certain" under West Virginia Rules of Civil Procedure Rule 55(b)(1) contemplates a situation where the amount due cannot be reasonably disputed, is settled with respect to amount, ascertained and agreed upon by the parties, or fixed by operation of law. A claim is not for a "sum certain" merely because the claim is stated as a specific dollar amount in a complaint, verified complaint, or affidavit.

202 W.Va. 69, 501 S.E.2d 786.

■ The parties do not dispute that the damages sought in Mr. Cales' complaint were unliquidated damages and not a sum certain. However, Mr. Cales contends that the *verdict* returned by the court against Mr. Wills converted the damages to a sum certain that could be imposed upon National without notice under Rule 55(b)(1).

On the date set for the bench trial against Mr. Wills, Mr. Cales made an oral motion for a default as to liability against National. The trial court granted the motion. Mr. Cales then proceeded to present evidence at the bench trial to determine liability and damages against Mr. Wills. The trial court rendered a verdict assessing liability against Mr. Wills as well as making a determination as to damages.[9] Subsequently, the trial court issued written findings of fact and conclusions of law in which default judgment damages were awarded against National. Mr. Cales argues to this Court that this procedure resulted in a sum certain damage amount. Consequently, the entry of a default judgment against National without prior notice was proper.

■ In contrast, National argues that fundamental principles of due process requires this Court to reject the procedure used in

---

**8.** For text of Rule 55(b)(1), see *supra* note 3.

**9.** As we previously noted, neither Mr. Wills nor his counsel were present at the bench trial.

this case to obtain a sum certain when the damages initially sought were unliquidated. We agree with National. To adopt Mr. Cales interpretation of Rule 55(b)(1) would thwart the underlying purpose of Rule 55(b)(2).

A controlling principle of Rule 55(b)(2) is that of providing notice and an opportunity to be heard before unliquidated damages may be assessed against a defaulting party who has made an appearance. Rule 55(b)(2) goes so far as to accept any type of informal communication between the litigants as sufficient to constitute an "appearance." Thus, a defaulting party must be given notice of the hearing to determine damages so long as he or she has met the negligible burden of making an appearance. This point is critical because informal communication between litigants, which generally will not prevent entry of default as to liability, will require a defaulting party be given notice *before* unliquidated damages may be assessed. *See generally* 10A Charles Alan Wright et al., *Federal Practice and Procedure: Civil 3d* § 2686, at 41 ("[I]t must be remembered that an appearance, without any further attempt to defend on the merits, will not keep a party from being held in default for failure to plead or otherwise defend; it merely activates the special notice and judicial review protections provided in the rule." (footnote omitted)).

Moreover, Rule 55(b)(2) contemplates an adversarial proceeding wherein a defaulting defendant may vigorously challenge the amount of damages to the plaintiff. In the instant proceeding, Mr. Wills and his counsel did not attend the bench trial during which damages were determined. In essence, the amount of damages that were ultimately assessed against National were

determined without any opposition as to their validity. This is not what Rule 52(b)(2) contemplates. Consequently, we hold that when unliquidated damages are involved, a plaintiff must utilize the procedure under Rule 55(b)(2) for obtaining default damages against a defaulting party. Thus, a plaintiff may not use a damage award obtained against a tortfeasor at an uncontested trial as the basis for obtaining default damages against a defaulting defendant under Rule 55(b)(1) of the West Virginia Rules of Civil Procedure.[10]

In accordance with the foregoing holding, Mr. Cales could not use the damage award obtained against Mr. Wills as the basis for imposing default damages against National under Rule 55(b)(1). Consequently, as a result of National having made an appearance for the purpose of Rule 55(b)(2), National was entitled to notice of the proceeding to obtain default damages. Insofar as notice was not given to National as required by Rule 55(b)(2), we must reverse and set aside the judgment of default as to damages.

### B. Default Determination of Liability

National next contends that the entry of default as to liability should be set aside in view of the factors established in *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 256 S.E.2d 758 (1979). In *Parsons*, we explained that the factors to be considered in determining whether a judgment by default should be vacated are: "(1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party." Syl. pt. 3, in part. Additionally,

**10.** The decision reached in this opinion is consistent with our decision in *State ex rel. Motorists Mutual Insurance Co. v. Broadwater*, 192 W.Va. 608, 453 S.E.2d 591 (1994). Although the procedure used in *Broadwater* to obtain a judgment against a defendant underinsured motorist insurance carrier was similar to that of the instant case, *Broadwater* did not involve the entry of default judgment. The primary issue presented in *Broadwater* was whether or not judgment could be rendered directly against the insurance carrier rather than the tortfeasor. We so held in *Broadwater*.

While we agree with Mr. Cales that he could have obtained a judgment directly against National under *Broadwater*, he chose not to do so. Instead, Mr. Cales proceeded under our default judgment rule. Consequently, he is bound to comply with the requirements of that rule. We are not prepared to extend *Broadwater* beyond its limited context in order to spare Mr. Cales the burden of fulfilling the procedural obligations associated with obtaining a default judgment.

under *Parsons* "there is the necessity to show some excusable or unavoidable cause to explain the delay in answering." *Parsons,* 163 W.Va. at 471, 256 S.E.2d at 762. We will analyze separately each of the *Parsons* factors.

**1. The degree of prejudice.** The initial inquiry under *Parsons* is a determination of the degree of prejudice to Mr. Cales if the default as to liability is vacated. National contends that Mr. Cales has failed to show that he would suffer any prejudice from a setting aside of the judgment of default as to liability. We agree.

All that Mr. Cales has shown is that setting aside the judgment of default as to liability would mean further delay in obtaining full compensation for his injuries. There has been no suggestion by Mr. Cales that evidence or witness testimony would be lost. *See, e.g., Cook v. Channel One, Inc.,* 209 W.Va. 432, 549 S.E.2d 306 (2001) (per curiam) (finding no prejudice).

**2. The presence of material issues of fact and meritorious defenses.** The second factor to be considered under *Parsons* is whether National has shown that material issues of fact and meritorious defenses exist. This Court has previously explained that this factor seeks to determine whether "there is . . . reason to believe that a result different from the one obtained would have followed from a full trial." *Hinerman v. Levin,* 172 W.Va. 777, 783–84, 310 S.E.2d 843, 850 (1983).

National has presented two defenses that it insists would result in a different outcome. First, National contends that Mr. Cales is not entitled to underinsurance coverage from the policy issued to the City of Hinton because he received workers' compensation benefits as a result of the injuries he sustained. Second, National argues that Mr. Cales is not entitled to underinsured motorist coverage because he was not injured as a result of his ownership, maintenance, or use of a motor vehicle, since the injuries were received after Mr. Cales and Mr. Wills existed their respective vehicles.

Although we make no comment on whether National could prevail on its two primary

defenses, the defenses do satisfy *Parsons'* second requirement. *See, e.g., State ex rel. United Mine Workers of Am., Local Union 1938 v. Waters,* 200 W.Va. 289, 299, 489 S.E.2d 266, 276 (1997) ("There is no reason to conclude at this juncture that the petitioners' defenses are not meritorious.").

**3. The significance of the interests at stake.** Under the third factor of *Parsons,* we must examine the interests at stake in the litigation. The default damages entered against National, which we have set aside, were in the amount of $113,734.19, plus post-judgment interest. Obviously, the potential damages at stake in this case are significant and therefore the third factor is also satisfied. *See, e.g., Parsons,* 163 W.Va. at 473, 256 S.E.2d at 763 (noting that "monetary damages in the amount of $35,000.00, . . . [are] not . . . insignificant").

**4. The degree of intransigence by the defaulting party.** Under *Parsons's* fourth factor, we are obligated to examine the degree of intransigence by National in responding to the complaint. This court has observed "that any evidence of intransigence on the part of a defaulting party should be weighed heavily against him in determining the propriety of a default judgment." *Hinerman,* 172 W.Va. at 782, 310 S.E.2d at 849. The record in this case shows that National was actually served with process by the Secretary of State's office on September 23, 1999. During the six month period between the date of service on National and the trial on March 24, 2000, National failed to either file an answer to the complaint, or file a separate declaratory judgment action contesting liability. We find this intransigence to be significant. *See, e.g., Lee v. Gentlemen's Club, Inc.,* 208 W.Va. 564, 542 S.E.2d 78 (2000) (per curiam) (affirming default judgment obtained by plaintiff seven months after complaint filed).

**5. The existence of excusable or unavoidable cause.** Under the final consideration required by *Parsons,* a defaulting party must show some excusable or unavoidable cause to explain the delay in answering the complaint. Mr. Cales contends that National has offered no excusable or unavoidable cause. We agree. National contends that it

did not file an answer to the complaint because it was not named as a party. This argument by National has no merit.

■ Under W. Va.Code § 33–6–31(d) (1998) (Repl.Vol.2000), an underinsured insurance carrier has "the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the . . . underinsured motor vehicle or in its own name." This Court explained in syllabus point 14 of *State ex rel. Allstate Ins. Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993), that "[t]he language of W. Va.Code § 33–6–31(d), that allows an uninsured or underinsured motorist carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy." Therefore, National has not shown excusable or unavoidable cause. *See, e.g., Diehl v. Liller*, 208 W.Va. 518, 541 S.E.2d 608 (2000) (per curiam) (affirming default judgment where no good cause shown).

6. **Weighing the *Parsons* factors.** We have determined that no undue prejudice would result against Mr. Cales by stetting aside default as to liability. We have also determined that National has two defenses that have merit, and that the potential damages against National are significant. However, these findings must be weighed against National's intransigence, which we have determined was significant, and National's utter failure to present any excusable or unavoidable cause for not filing a timely answer. We believe that the proper balance in this case requires us to affirm the trial court's denial of National's motion to set aside judgment of default as to liability. *See Hinerman v. Levin*, 172 W.Va. 777, 782, 310 S.E.2d 843, 848 (1983) ("[A]lthough this court is quite willing to review default judgments and to overturn them in cases where good cause is shown, a demonstration of such good cause is a necessary predicate to our overruling a lower court's exercise of discretion."). Thus, we find the circuit court did not abuse its discretion in denying National's Rule 60(b) motion as it pertained to the determination that National defaulted in this action.

## IV.

## CONCLUSION

We affirm the circuit court's entry of default as to liability against National. We reverse the entry of default as to damages, and remand this case for a hearing, pursuant to Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, to determine the proper amount of damages to be assessed against National.

Affirmed in part; Reversed in part; and Remanded.

ALBRIGHT, Justice, concurring.

(Filed July 3, 2002)

I write separately to express certain concerns that the majority's opinion either fails to address or that are in need of further clarification. When possible, this Court clearly prefers that legal matters be determined on their merits. *See McDaniel v. Romano*, 155 W.Va. 875, 879, 190 S.E.2d 8, 11 (1972). At the same time, however, this Court fully recognizes the validity of and supports the enforceability of a default judgment that is properly obtained. In light of the finality of such judgments, barring successful Rule 60(b) motions, this Court has a duty to ensure that the requirements necessary for the issuance of default judgments are properly applied.

### *Lack of Defendant's "Appearance"*

In discussing the distinction between default judgments that are obtained under the provisions of Rule 55(b)(1), as compared to those that result via the procedures of Rule 55(b)(2), the majority singularly focuses on the presence of a "sum certain" as the crucial requisite for proceeding under the former provision of the rule. While a sum certain is necessary to proceed under Rule 55(b)(1), the distinction that determines whether a clerk can enter the judgment or whether the court must enter the judgment is the issue of whether there has been an appearance by the defendant for purposes of this rule. In tailoring its discussion to the narrow issue of a "sum certain," the majority overlooks the

significance of the absence of an appearance by the defendant as a critical component of a default judgment that is entered pursuant to Rule 55(b)(1).

Thus, in establishing as a new point of law that "[g]enerally, under Rule 55(b)(1) of the West Virginia Rules of Civil Procedure, when the damages sought by a plaintiff involve a sum certain or a sum which can by computation be made certain, a judgment by default may be entered against a party who has defaulted as to liability without prior notice to that party," the majority appears to gloss over the essential distinction between default judgments obtained under Rule 55(b)(1) and (b)(2). Only where no appearance has been made by the defendant, can a default judgment be entered under Rule 55(b)(1).[1] *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2683 at 24–25 (3rd ed.1998) (stating that Rule 55(b)(1) "applies only to parties who have never appeared in the action; it does not apply when a party appears and then merely fails to participate in some subsequent stage of the proceedings").

In attempting to distinguish those instances that properly fall under Rule 55(b)(1) from those required to proceed under Rule 55(b)(2), the majority should have followed the distinction used in the rule itself. Rule 55(b)(1) is labeled to apply only to those limited instances when a clerk is authorized to enter the default judgment, while Rule 55(b)(2) covers all the remaining instances, which require the active involvement of the circuit court judge in the process of entering judgment. *See generally,* Wright, *supra* at § 2684 (noting limited instances when default judgment can be entered under Rule 55(b)(1) and recognizing that in all other instances, including those in which "defendant is in default for a reason other than a failure to appear," application for judgment must proceed under Rule 55(b)(2)).

*Oral Communication Constituting an "Appearance"*

In establishing what constitutes an "appearance" for purposes of the notice requirement that attaches under the provisions of Rule 55(b)(2), the majority states that any communication, be it oral or written, suffices to constitute an "appearance," provided that such communication "demonstrates either an interest in the pending litigation, or actual notice of the litigation." In formulating this new law, the majority leaves unanswered several related concerns. I am concerned that when this law is applied, the practicing lawyers may find themselves without the necessary guidance to proceed. This is because, in elevating to a syllabus point the concept of oral communications being sufficient to constitute an "appearance" under Rule 55,[2] the majority has failed to properly instruct the practitioner as to the parameters of oral communications that can properly be viewed as an "appearance" for purposes of the Rule 55.

Other courts that have considered this issue have made clear that not just any oral communication will suffice to constitute an appearance for purposes of invoking the notice requirement of Rule 55(b)(2). As the court made clear in *Alliance Group, Inc. v. Rosenfield,* 115 Ohio App.3d 380, 685 N.E.2d 570 (1996), "[a] telephone call between parties would not constitute an appearance unless circumstances give the call some legal effect." *Id.* at 577. Generally, an affirmative act is required that manifests an intention to defend the action. *See id.; accord Miamisburg Motel v. Huntington Nat'l Bank,* 88 Ohio App.3d 117, 623 N.E.2d 163, 170 (1993) (recognizing that telephone call that indicates to moving party clear purpose to defend the suit is sufficient to constitute appearance and trigger notice requirements under Rule 55); *see generally* Scott K.

---

1. While perhaps the majority intended to implicitly refer to the lack of an appearance in referencing the entry of a default as to liability, this is not accurate because the default as to liability may have been entered on a basis other than the lack of an appearance.

2. This position had previously only been recognized by this Court in notes accompanying two of our decisions. *See Farm Family Mut. Ins. Co. v. Thorn Lumber Co.,* 202 W.Va. 69, 75, n. 9, 501 S.E.2d 786, 792 n. 9 (1998); *accord Colonial Ins. Co. v. Barrett,* 208 W.Va. 706, 709, n. 2, 542 S.E.2d 869, 872 n. 2 (2000).

Zesch, *What Constitutes "Appearance" under Rule 55(b)(2) of Federal Rules of Civil Procedure, Providing that if Party Against Whom Default Judgment is Sought has "Appeared" in Action, that Party must be Served with Notice of Application for Judgment,* 139 A.L.R. Fed. 603, § 9[a], [b] (1997). Not all conversations, however, will be sufficient to amount to an appearance under the rule. *See, e.g., Ryan v. Collins,* 481 S.W.2d 85, 88 (Ky.1972) (holding that defendant had not "voluntarily taken a step in the main action that showed or from which it might be inferred that he had the intention of making some defense" where defendant had conversation with plaintiff's attorney regarding pending action and plaintiff's counsel merely instructed defendant to take summonses to insurance company).

While the issue of whether an "appearance" results from an oral communication will necessarily be a factual determination based on the nature of the conversation, as a general rule an "appearance" will result from a communication that conveys a clear intent to defend against the lawsuit at issue and may also be implied by language that indicates the defendant has taken or intends to take some steps related to the pending action that are either beneficial to the defendant or detrimental to the plaintiff's interests. *See Heleasco Seventeen, Inc. v. Drake,* 102 F.R.D. 909, 912 (D.Del.1984). Missing from the majority's adoption of this new point of law permitting an oral communication to constitute an "appearance" is the clarification that the communication must involve an indication on the defendant's part to take some action relative to the lawsuit. Absent such an affirmative indication, an oral communication is unlikely to rise to the level of the "appearance" necessary to trigger the notice requirements of Rule 55(b)(2).

### Practitioner Pointers

Despite the fact that Rule 55(b)(1) clearly allows default judgments to be taken in instances where no appearance has been made by the defendant and there is a "sum certain," I respectfully suggest to practitioners that it is by far the better practice to send notice of a default judgment application whenever counsel has sufficient information from which to serve such notice upon the defendant or defendant's counsel. Notice should be given to all parties who, despite the non-filing of formal pleadings, have nonetheless indicated a clear purpose to defend the suit by means of communication with the moving party.[3] Thus, if notice can be sent to an opposing party, it would appear prudent to dispatch such notice and hopefully foreclose unnecessary litigation that may result from the failure to advise a party of a default judgment application.

Based on the foregoing, I respectfully concur with the majority's decision.

McGRAW, Justice, concurring in part, and dissenting in part.

### (Filed July 11, 2002)

While I agree that National's intransigence in this case justifies a finding of default as to liability, I take issue with the majority's action in reversing the resulting award of damages. Specifically, I disagree with the majority's assertion in syllabus point five of the Court's opinion that for purposes of West Virginia Rule of Civil Procedure 55(b)(2), an "appearance" by a party to a litigation may consist of nothing more than an oral or written communication to the opposing party demonstrating an interest in the pending litigation.

As the majority opinion readily admits, our past cases dealing with this issue are in conflict. In *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 374–76, 175 S.E.2d 452, 455 (1970), this Court expressly rejected the notion that mere oral communication between counsel constitutes an appearance under

---

3. *See Miamisburg,* 623 N.E.2d at 170. By applying Rule 55 in this fashion, the court in *Miamisburg* observed that "informal, honest communication between the parties to a lawsuit [will be fostered] ... [and] may lead to the resolution of disputes without resort to the legal process." *Id.; see also* Zesch, *supra,* at § 2[b] (recognizing that "most federal courts appear to be primarily concerned with the good faith of the moving party and fairness to the defaulting party" and that "[c]onsequently, courts may take into account whether the moving party attempted to obtain a default judgment by stealth").

Rule 55(b)(2). More recently, however, in dictum contained in *Farm Family Mutual Ins. Co. v. Thorn Lumber Co.*, 202 W.Va. 69, 501 S.E.2d 786 (1998), we indicated that "[t]he term 'appeared in the action' for purposes of Rule 55(b)(2) is quite different from an appearance for other purposes (such as establishing personal jurisdiction)." *Id.* at 75 n. 9, 501 S.E.2d at 792 n. 9. I see no valid reason why we should give divergent meanings to this term of art, particularly as there are sound policy reasons for resolving this conflict by adhering to the stance this Court originally took in *Intercity Realty.*

Even the federal courts, from where we derive Rule 55(b)(2), are not unanimous as to what constitutes an appearance in this context. In *Anderson v. Taylorcraft, Inc.*, 197 F.Supp. 872 (W.D.Pa.1961), an appearance with respect to Rule 55(b)(2) was described as "ordinarily an overt act by which a party comes into a court and submits himself to its jurisdiction." *Id.* at 874 (citation omitted). Following this standard, the Seventh Circuit, in *Zuelzke Tool & Engineering Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226 (7th Cir.1991), declined to find that "informal settlement negotiations" between parties could amount to making an appearance under Rule 55(b)(2):

> [A] party "has appeared in the action" under Rule 55(b)(2) only where that party has actually made some presentation or submission *to the district court* in the pending action. Such an interpretation is consistent with traditional and accepted legal parlance in which "appearance" is defined as "a coming into court as a party to a suit, either in person or by an attorney, whether as plaintiff or defendant."

*Id.* at 230 (quoting *Black's Law Dictionary* 89 (5th Ed.1979)) (emphasis in original).

In *Town and Country Kids, Inc. v. Protected Venture Inv. Trust # 1, Inc.*, 178 F.R.D. 453 (E.D.Va.1998), the district court found that a notarized deposition sent from defendant's to plaintiff's counsel, suggesting the possibility of settlement, was not enough to constitute an appearance under Rule 55(b)(2). That court reasoned that "requiring a party to make at least some submission to the district court is necessary to apprise

the court of . . . whether that party has an interest in defending the suit." *Id.* at 455. Likewise, in *Rogers v. Hartford Life and Accident Insurance Co.*, 167 F.3d 933 (5th Cir.1999), the court would not accept the defendant's claim that its waiver of service of process constituted an appearance under the rule: "We will not interpret the phrase 'appeared in the action' so broadly as to eviscerate the appearance requirement of Rule 55(b)(2)." *Id.* at 937.

These authorities emphasize the importance of keeping a trial court informed of the status of pending litigation. "Efficient court management and reliability of judicial process is enhanced by court records which disclose the critical procedural actions of the parties—such as the entry of an appearance." *Zuelzke*, 925 F.2d at 230. Interpreting Rule 55(b)(2) so broadly as to allow an appearance to be predicated upon "any communication to an opposing party that demonstrates either an interest in the pending litigation, or actual notice of the litigation," as the majority does in the present case, will inevitably lead to confusion and disorganization in the lower courts. A simple acknowledgment by a party of having received notice of pending litigation does not reveal to anyone, most importantly the circuit court, what that party's intentions are with respect to defending the action. *See Rogers*, 167 F.3d at 938 ("Waiver of service of process does not in any way indicate that a defendant intends to defend."). This is nowhere more evident than in the instant case, where National's response to a waiver of subrogation request obviously did not signal its intent to defend the present action.

Although I recognize the importance of giving a defendant an opportunity to defend against an application for default judgment, the Court should not go out of its way to find an appearance based upon communications that may indicate nothing more than *de minimis* attention to the litigation. As the Seventh Circuit emphasized in *Zuelzke*, "it is a disservice to the legal system to distort the meaning of a concrete term such as 'appearance' in order to provide a mechanism to save a party from a default judgment." 925 F.2d at 230. With this admonition in mind, I

would adopt the *Zuelzke* court's approach to resolving this issue.

Therefore, I respectfully concur with Part III.B of the majority opinion respecting National's default as to liability, but dissent from Part III.A of the opinion, which reverses the circuit court's award of damages. National was not entitled to notice under Rule 55(b)(2) because it never made a proper appearance in the action prior to the entry of a default judgment.